UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT H. COLLINS, JR. and
EILEEN COLLINS,

    Plaintiffs,

v.                                      CASE NO: 8:09-CV-1147-T-30AEP

COUNTRYWIDE HOME LOANS, INC.,
et al.,

    Defendants.
_____/

# ORDER

THIS CAUSE comes before this Court upon Defendant Countrywide Home Loans, Inc.'s (1) Motion to Dismiss Amended Complaint (Dkt. 14) and (2) Motion to Strike the Jury Trial Demand from the Amended Complaint (Dkt. 15). This Court, having considered Countrywide's motions, Plaintiffs' Second Amended Complaint (Dkt. 33), Plaintiffs' response (Dkt. 38) and being otherwise advised in the premises, determines that the Motion to Dismiss Amended Complaint should be granted in part and denied in part, and the Motion to Strike Jury Trial Demand should be granted.

## BACKGROUND

**Factual background**

This case involves the fallout from a series of mortgages issued by Countrywide Home Loans, Inc. (hereinafter "Countrywide") to Robert H. Collins, Jr. and wife Eileen

Collins (hereinafter "Plaintiffs") in March 2007. The facts alleged in the complaint are taken as true for the purpose of ruling on these motions.[1]

According to the complaint, Plaintiffs lived in a condominium (hereinafter "condo") in St. Petersburg, Florida. Robert Collins had a leasehold estate interest, not a fee interest, in the condo, which he inherited from his mother. Plaintiffs decided they wanted to purchase a single-family home and contacted Countrywide to arrange financing. Countrywide's representatives told Plaintiffs that they were experts in constructing financing arrangements for single-family home buyers and that Countrywide could put together an arrangement that would allow Plaintiffs to finance buying the single-family home. Plaintiffs were not represented by counsel during these discussions or during the subsequent transactions.

Plaintiffs allege that Countrywide instructed them that Robert Collins should execute a quitclaim deed seemingly transferring ownership of the condo from solely his name to ownership for both him and his wife. Plaintiffs allege that an employee of National Real Estate Information Services (hereinafter "NREIS"), another defendant in this case, acted as the settlement agent and prepared the quitclaim deed. Plaintiffs state that Countrywide, NREIS and Ticor Title Insurance Company of Florida (hereinafter "Ticor"), a title insurance underwriter and another defendant in this case, told Plaintiffs that the quitclaim deed was an appropriate document necessary to closing the deal. Plaintiff also states that Countrywide,

---

[1] This Court notes that some of Plaintiffs' allegations are inconsistent with documents they attached to the complaint. This includes allegations about the nature of the claim the condo's fee interest owner brought against Plaintiffs, and the nature of the quitclaim deed. Because these differences do not affect the ruling in this order, this Court will not take the time to discuss the inconsistencies in detail.

NREIS and Ticor improperly prepared the HUD-1 settlement statement required by the US Department of Housing and Urban Development to disguise the level of Plaintiffs' indebtedness at the time of closing.

With both Plaintiffs' names on the title to the condo, Countrywide issued a mortgage backed by the condo. The proceeds from the condo mortgage were disbursed to pay Plaintiffs' unsecured debts, making them better candidates for a mortgage to purchase a single-family home. Plaintiffs signed the condo mortgage on March 23, 2007.

Countrywide also advised Plaintiffs to rent the condo. Rental income from the condo would make Plaintiffs better candidates for a single-family home mortgage, and could also be used to pay the mortgage on the condo. Plaintiffs signed the mortgage on a single-family home on March 23, 2007. Countrywide subsequently sold both mortgages to the Bank of New York Mellon, which has since begun foreclosure proceedings.

Problems began when Plaintiffs' tenant ceased making rental payments. Plaintiffs were no longer able to pay the mortgage on the condo or on the single-family home. They also ceased making monthly condo payments required by their lease.

M ore problems arose when the true owner of the fee interest in the condo learned that Plaintiffs executed the quitclaim deed and were renting the condo in violation of Robert Collins' leasehold interest in the property. The fee interest owner brought suit against Plaintiffs. Additionally, by converting the condo into a rental unit, Plaintiffs lost the Florida homestead tax protection which caps property taxes.

As a result of these happenings, Plaintiffs allege that they suffered a variety of damages, including (1) harm to their credit rating due to the foreclosure filings; (2) attorney's fees incurred in litigation defending against the fee interest owner of the condo; (3) loss of the Florida homestead tax protection which resulted in increased real property taxes; and (4) exposure to deficiency balances in the Bank of New York Mellon foreclosure proceedings.

**Procedural background**

Plaintiffs originally filed suit solely against Countrywide in the Sixth Judicial Circuit for Pinellas County, Florida, in May 2009. Countrywide removed the case to this Court on June 19, 2009. Plaintiffs filed an Amended Complaint on July 5, 2009, which included five counts: (1) fraud; (2) negligent misrepresentation; (3) declaratory judgment as to the jury trial waiver provision in the condo mortgage; (4) declaratory judgment as to the validity of the condo mortgage; and (5) breach of fiduciary duty (Dkt. 9). On July 20, 2009, Countrywide filed both a Motion to Dismiss Amended Complaint (Dkt. 14) and Motion to Strike the Jury Trial Demand (Dkt. 15). Plaintiffs filed responses on August 16, 2009 (Dkt. 20, 21).

On November 5, 2009, Plaintiffs filed a Second Amended Complaint adding NREIS and Ticor as defendants (Dkt. 33). The Second Amended Complaint has five counts: (1) fraud against Countrywide; (2) negligent misrepresentation against Countrywide; (3) declaratory judgment as to the jury trial waiver provision in the condo mortgage; (4) breach of fiduciary duty against Countrywide; and (5) negligence against Countrywide and NREIS and Ticor. Plaintiffs filed a second response to Countrywide's Motion to Dismiss on December 13, 2009 (Dkt. 38).

When this Court gave Plaintiffs leave to amend their complaint (Dkt. 31), it was stated that Countrywide's motions to dismiss and to strike jury demand would stand against Plaintiffs' amended complaint. Plaintiffs' initial complaint before this court did not include the negligence claim which they included in their amended complaint, so Countrywide's motions do not address this claim. However, this Court will address Plaintiffs' negligence claim *sua sponte*.

## **LEGAL STANDARD**

### A.  **Motion to Dismiss Standard Under 12(b)(6)**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all the inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive a motion to dismiss, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The threshold of sufficiency that the complaint must meet to survive a motion to dismiss is exceedingly low. *See Anacata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545.

B.  **Application of Erie Doctrine**

Because jurisdiction in this case is founded upon diversity of citizenship, this Court is bound to apply the substantive law of the state in which it sits. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). This Court will apply substantive Florida law on Plaintiffs' fraud, negligent misrepresentation, breach of fiduciary duty and negligence claims.

## DISCUSSION

A.  **Plaintiffs have not met their burden to plead fraud or negligent misrepresentation**

Because the elements of Count 1 (fraud) and Count 2 (negligent misrepresentation) are so similar[2], particularly the case law concerning what constitutes the "material fact" element of both claims, the two counts will be addressed together.

To plead fraud under Florida law, a plaintiff must allege: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew or should have known the statement was false when he made it; (3) the defendant made the false statement with an intention that the plaintiff rely and act on it; (4) an injury resulted to the plaintiff who acted in justifiable reliance on the false statement. *Simon v. Celebration Co.,* 883 So. 2d 826, 832

---

[2] Indeed, this Court considers negligent misrepresentation to be a part of the tort of fraud: a statement known to be false (fraud) or that one should have known was false (which some refer to as negligent misrepresentation) that was made with intention that another rely upon it, and that person did so to his detriment. *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

(Fla. 5th DCA 2004).

To plead negligent misrepresentation under Florida law, a plaintiff must allege: (1) the defendant made a statement of a material fact that the defendant believed was true but was actually false; (2) the defendant was negligent because he should have known the statement was false; (3) the defendant intended to induce the plaintiff to rely on the false statement; and (4) an injury resulted to the plaintiff acting in justifiable reliance on the false statement. *Id.*

The "material fact" needed to support a claim of fraud or negligent misrepresentation generally must be a statement concerning a past or present fact. *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001); *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1995). An action for fraud or negligent misrepresentation generally cannot be predicated on opinions. *Mejia*, 781 So. 2d at 1177; *Thor Bear,* 648 So. 2d at 172.

There is a recognized exception to this rule: when the false statement was made by a person having superior knowledge of the subject of the statement, and the plaintiff can show that the person knew or should have known from the facts in his possession that the statement was false, then the opinion statement can be treated as a statement of fact. *Mejia*, 781 So. 2d at 1177; *Thor Bear, Inc.*, 648 So. 2d at 172. However, a statement by a lender about whether a borrower can financially afford a loan is a statement involving facts more available to the borrower than to the lender. *Thompson v. Bank of New York*, 862 So. 2d 768, 771 (Fla. 4th DCA 2003) ("[The borrower] had to know his own financial capacity better than a stranger").

7

In this case, Plaintiffs have failed to plead that Countrywide made a false statement of a material fact that could support a fraud or negligent misrepresentation claim. The bulk of Plaintiffs' allegations is that Countrywide told Plaintiffs they could qualify for a series of mortgages, and that Plaintiffs could afford the payments on such mortgages. Statements about Plaintiffs' qualifications for loans are statements of facts concerning a lender's loan criteria.[3] These statements have not been alleged to have been false. Indeed, Plaintiffs did qualify for the loans. Statements about another's ability to make payments are opinions, and, as such, do not constitute grounds for fraud or negligent misrepresentation. They also do not fall into the exception stated above. Even though Plaintiffs allege that Countrywide had access to Plaintiffs' financial records (Dkt. 33, ¶ 22), Plaintiffs have not alleged that Countrywide had superior knowledge of Plaintiffs' financial state of affairs.[4]

Furthermore, Plaintiffs' allegation that Countrywide knew Plaintiffs could not continue making payments on the condo if their tenant failed to make rent payments is also not a material fact because it concerns potential future conditions. Additionally, Plaintiffs

---

[3] This Court notes that one Florida case states that a lender expressed an opinion when it told a borrower that he had the financial means to qualify for a loan. *Thompson v. Bank of New York*, 862 So. 2d 768, 770-71 (Fla. 4th DCA 2003).

[4] It is difficult to believe that Plaintiffs did not have better information regarding their financial situation than did Countrywide, including better insight into their financial future. For example, Plaintiffs would be better able to assess the stability of their future employment, spending habits, etc. Countrywide could not have better insight into the likelihood that Plaintiffs would encounter life changes that wold substantially change their financial situation and render them unable to make mortgage payments, including an illness, having children, losing rental income from a tenant, etc.

have not alleged that Countrywide knew more than Plaintiffs about Plaintiffs' need to have a paying tenant in order to be able to afford the mortgage payments.

Even if Plaintiffs rely on their assertion that "Countrywide ... represented to [Plaintiffs] at the closing that the Quitclaim Deed was a valid and appropriate document necessary to consummate the closing" (Dkt. 33, ¶ 21.d), this fails to meet the second requirement to plead fraud: the defendant who made the false statement knew or should have known the statement was false. To properly plead fraud, a plaintiff's complaint must identify specific facts and state how they were false. *Simon*, 883 So. 2d at 832-33. Here, Plaintiffs assert that Countrywide stated that the quitclaim deed was valid, but fail to assert that Countrywide knew or should have known that it violated Plaintiffs' leasehold interest.

This assertion also fails to meet the second requirement to plead negligent misrepresentation: the defendant was negligent because he should have known the statement was false. Again, Plaintiffs have failed to allege that Countrywide should have known that the quitclaim deed violated the Plaintiffs' leasehold interest. Countrywide was a mortgage company in the business of issuing loans. It was not a title agent responsible for checking borrowers' fee interests in residential property to facilitate rental agreements.

For the reasons stated above, Plaintiffs have failed to plead allegations that could constitute a claim of fraud or negligent misrepresentation. Countrywide's motion to dismiss Count 1 and Count 2 is **GRANTED**.

**B.     The jury trial waiver is enforceable**

**1.     Plaintiffs voluntarily assented to the waiver**

The right to a jury trial in a diversity action in federal court and whether that right has been waived is determined by federal law. *Allyn v. Western United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004). Absent a showing of fraud or mental incompetence, a party who signs a contract cannot avoid his obligation under the contract simply by showing he did not read what he signed. *Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986).

To enforce a jury trial waiver, the waiver must have been assented to knowingly, voluntarily, and intelligently. *Allyn*, 347 F. Supp. 2d at 1252. The Eleventh Circuit has not decided whether the party seeking to enforce a jury trial waiver or the party opposing the waiver bears the burden of proving the validity of the waiver, and instead considers the following five factors in determining whether the waiver was knowing and voluntary: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. *Id.* A court can consider these factors, but they are not determinative. *Id.* Instead, a court must consider whether, in light of the circumstances, the waiver was "unconscionable, contrary to public policy, or simply unfair." *Id.*; *see also Gulati v. Countrywide Home Loans, Inc.*, No. 6:05-CV-1097-Orl-28DAB, 2006 WL 6300891, at *1-2 (M.D. Fla. Feb. 17, 2006).

In evaluating the first factor concerning the conspicuousness of the waiver, a provision is conspicuous when it is present in a separate paragraph, printed in a font that is the same size as the rest of the document, located in the last paragraph of a relatively short document, and worded in clear and unambiguous language. *Belon v. Litton Loan Servicing, L.P.*, No. 8:06-CV760-T-24-EAJ, WL 2061340 (M.D. Fla. July 17, 2006).

The waiver in Plaintiffs' condo mortgage agreement reads as follows:

> **25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in anyway related to this Security Instrument or the Note.

In this case, the clause was the final numbered paragraph of the 11-page mortgage agreement and was located directly above Plaintiffs' signatures (Dkt. 33, at R. 58). The subject of the paragraph containing the waiver was titled "Jury Trial Waiver" and printed in bold typeface. Though the average layman may not understand the detailed nuances of the provision concerning "whether in contract or tort, at law or in equity", it is clear that the party signing the document is waiving his right to a jury trial. Simply reading the three-word bolded introduction to the paragraph makes this clear to the average reader.

In evaluating the second factor on the sophistication of the parties, on their condo mortgage application Robert Collins identified himself as a "tile guy" for a tile supply company and Eileen Collins identified herself as an "analyst" at a media company. Plaintiffs do not appear to be either particularly sophisticated or unsophisticated, so these facts do not cut in favor of either party. Plaintiffs' assertion that they have "no special expertise or

education in matters involving finance, real estate, law, mortgages, or related matters and are otherwise not sophisticated borrowers" does not come into consideration. The jury waiver paragraph is written clearly and in a way that the average person could understand its implications. No special education or expertise would have been needed to understand this provision.

Regarding the third factor concerning the parties' ability to negotiate the terms of the contract, nothing in the filings before this Court indicate that Plaintiffs had to sign the mortgage agreement as it was originally written. Plaintiffs have only alleged that they could not have negotiated over the provision because they first saw it at the closing. Plaintiffs do not explain why they could not have negotiated the clause at that time, or why they could not have simply walked away from the deal if they found the terms of the agreement unreasonable. Furthermore, this Court notes that Plaintiffs state both that they did not read or understand the waiver, and also that they did not have a chance to negotiate its contents (Dkt. 33, paras. 51.d, 51.f), seemingly arguing that (1) they did not read the waiver, (2) they did read it but did not understand, as well as that (3) they read it and understood it but could not negotiate its contents.

As for the fourth factor, the relative bargaining power between the parties, a term in a contract waiving a party's right to a jury trial is not unenforceable even though one party to a contract is a large corporation and the other party is simply an individual who is in need of the corporation's services. *Milsap v. Cornerstone Residential Management, Inc.,* No. 05-60033-CV-MARRA/JOHNSON, 2007WL 965590, (S.D. Fla. March 28, 2007) (a single

12

mother with two small children in need of housing could have walked away from an apartment lease containing a jury trial waiver if she found the lease terms unacceptable).

In this case, nothing in the pleadings leads this Court to believe that balance of bargaining power tipped heavily against Plaintiffs. It does not appear that Plaintiffs signed the document under any kind of extreme pressure. Nothing in the pleadings even hint that Plaintiffs could not have simply walked away from the deal - a strong bargaining chip - if they found it to be unacceptable. Plaintiffs were living in the condo and, while they may have *wanted* to go through with the condo mortgage as a step to qualifying for the single-family house mortgage, nothing in the pleadings indicates that Plaintiffs were in dire straits and truly *needed* to go through with the condo loan.

As for the fifth factor concerning whether the waiving party was represented by counsel, a jury trial waiver is not unenforceable even though one party to a contract is a large corporation represented by counsel and the other party is an individual not represented by counsel. *Id.*

The totality of the circumstances indicate that the waiver is enforceable. The waiver is not unconscionable, contrary to public policy or simply unfair. It was clear and conspicuous. Plaintiffs are not plainly unsophisticated or vulnerable parties. Nothing indicates that Plaintiffs could not have negotiated the terms of the contract, or that they were forced to sign the mortgage documents in a situation where they had no bargaining power. Even though Plaintiffs were not represented by an attorney, this in and of itself does not relieve Plaintiffs from obligations they took upon themselves.

## 2. Plaintiffs have not pleaded that the waiver itself was induced by fraud

An allegation of fraud going to a contract generally is not enough to invalidate a jury trial waiver provision in a contract. *Allyn*, 347 F. Supp. 2d at 1255. Allegations and evidence of fraud must relate specifically to the waiver provision. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). The Middle District of Florida has noted the impracticability of a situation where a party could invalidate a jury trial waiver agreement simply by general allegations of fraud. *Allyn*, 347 F. Supp. 2d at 1255.

In this case, Plaintiffs' allegations regarding fraud do not specifically relate to the jury waiver provision. Their assertion that Countrywide procured the waiver by fraud (Dkt. 33, ¶ 51.d) is merely a vague repetition of their fraud claim that Countrywide made false statements about Plaintiffs' ability to afford the payments, and do not relate specifically to the jury waiver provision.

For these reasons, this Court concludes the jury waiver provision is enforceable. Countrywide's Motion to Strike Jury Demand is **GRANTED** and Count 3 of Plaintiffs' Second Amended Complaint is **DISMISSED**.

## C. Breach of fiduciary duty

### 1. Plaintiffs have met their burden to plead breach of fiduciary duty

The elements of a breach of fiduciary duty action are (1) the existence of a fiduciary duty and (2) the breach of that duty that was the proximate cause of the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary relationship exists when "confidence is reposed by one party and trust accepted by the other." *Doe v. Evans*, 814 So.

2d 370, 374 (Fla. 2002), *quoting Quinn v. Phipps*, 113 So. 419, 421 (Fla. 1927). Such a relationship exists where "confidence is reposed on one side and there is resulting superiority and influence on the other." *Atlantic Nat'l Bank of Florida v. Vest*, 480 So. 2d 1328, 1333 (Fla. 2d DCA 1986). When a fiduciary relationship has not been created by an express agreement, the question of whether the relationship exists generally depends "upon the specific facts and circumstances surrounding the relationship of the parties in a transaction in which they are involved." *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 3d DCA 2003).

Florida courts generally hold that the creditor-debtor relationship is an arm's length transaction that does not create a fiduciary relationship. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). However, some Florida cases hold that a fiduciary relationship can exist between lenders and borrowers. *Id.* at 518-19. A fiduciary relationship existed between a loan officer and a borrower where the loan officer (1) expressly invited the borrower's reliance by urging the borrower to trust him and (2) exceeded his role as a traditional lender when he provided business advice to the borrower and orchestrated a financial transaction for the borrower's business. *Id.* at 520. A fiduciary relationship arose between a borrower and a bank when the borrower asked a bank loan officer a legal question "thus creating a position of superiority and influence on the part of the bank in providing the information." *Atlantic Nat'l Bank of Florida*, 480 So. 2d at 1333. Additionally, a jury could have reasonably found that a confidential relationship existed between a borrower and a bank when the bank loan officer gave the borrower financial advice concerning a possible

investment, which imposed a higher duty on the bank. *Hooper v. Barnett Bank of West Florida*, 474 So. 2d 1253, 1258 (Fla. 1st DCA 1985).

In this case, Plaintiffs have pleaded sufficient facts to state a claim of breach of fiduciary duty. Plaintiffs allege that Countrywide encouraged them to rely on its expertise in financing and its ability to construct a financial arrangement for them. Plaintiffs allege that these statements expressly invited Plaintiffs to repose confidence with Countrywide, and that Countrywide expressly accepted this confidence when it orchestrated a financial plan for Plaintiffs. Plaintiffs have alleged that this resulted in Countrywide having superiority and influence over Plaintiffs' financial decision making.

Plaintiffs have also pleaded that the financial advice Countrywide gave them breached Countrywide's fiduciary duty, and that the resulting complications were the proximate cause of Plaintiffs' losses. Therefore, Plaintiffs have sufficiently pleaded breach of fiduciary duty.

### 2. Economic Loss Rule does not bar Plaintiffs' breach of fiduciary duty claim

When a contract exists between two parties, a breach of fiduciary duty claim is not precluded by the Economic Loss Rule if the fiduciary breach claim requires proving different elements than the breach of contract claim. *Invo Florida, Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1266-67 (Fla. 3d DCA 2000). In this case, Plaintiffs have pleaded breach of fiduciary duty, a tort independent of a breach of contract. Plaintiffs have not pleaded that Countrywide failed to honor provisions of the contract, but rather that Countrywide violated its fiduciary duty by encouraging Plaintiffs to enter the contract in the first place. The

16

Economic Loss Rule does not bar Plaintiffs' breach of fiduciary duty claim.

For these reasons, Countrywide's motion to dismiss Count 4 is **DENIED**.

D.   **Plaintiffs have stated a negligence claim**

To state a negligence claim, a plaintiff must allege the following elements: (1) defendant had a duty towards the plaintiff; (2) defendant breached that duty; (3) defendant's breach was the proximate cause of the plaintiff's injury; and (4) plaintiff's damages resulting from the injury. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

Plaintiffs have alleged that Countrywide assumed the responsibility to draft the quit claim deed when NREIS, as an agent for Countrywide, prepared the deed.[5] Plaintiffs state that Countrywide owed them a duty to exercise reasonable care to review the state of the title and determine if the quit claim deed violated any restrictions on the title. They also allege that Countrywide owed them a duty to exercise reasonable care in recommending that they execute the quit claim deed, and to advise them of all implications of executing the deed. Plaintiffs allege Countrywide breached its duty by failing to do these actions, and that this breach resulted in a variety of injuries to Plaintiffs, including being sued by the true title owner of the condo, execution of the mortgages on the condo and the single-family home that ultimately went into foreclosure, and loss of Plaintiffs' homestead exemption on the condo.

---

[5] This Court cautions Plaintiffs that they are under a duty to use diligent efforts to investigate the facts they set forth in the complaint. It would appear that an investigation of the settlement documents might reveal whether NREIS was truly Plaintiff's agent, rather than Countrywide's agent.

This Court concludes that Plaintiffs have sufficiently pleaded a negligence claim against Countrywide.

It is therefore ORDERED AND ADJUDGED that:

1. Countrywide's Motion to Dismiss Amended Complaint (Dkt. 14) is **GRANTED IN PART and DENIED IN PART**.

2. Countrywide's Motion to Strike Jury Trial Demand (Dkt. 15) is **GRANTED**.

**DONE** and **ORDERED** in Tampa, Florida on January 5, 2010.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

F:\Docs\2009\09-cv-1147.mtd 14.wpd