## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROBERT H. COLLINS, JR., and
EILEEN COLLINS,
Husband and Wife,
     Plaintiffs,

v.                        Case No. 8:09-cv-01147-JSM-EAJ

COUNTRYWIDE HOME LOANS, INC.,
     A New York Corporation,
NATIONAL REAL ESTATE INFORMATION SERVICES
and
FIDELITY NATIONAL TITLE INSURANCE COMPANY,

     Defendants.
_____/

### THIRD AMENDED COMPLAINT

The Plaintiffs, Robert H. Collins, Jr., and  Eileen Collins (Collectively,

"Collins," or  "the Collins") now sue the Defendants, Countrywide Home Loans,

Inc. ("Countrywide"), National Real Estate Information Services ("NREIS") and

Fidelity National Title Insurance Company ("Fidelity") and in support hereof, state

as follows:

    1.  The Collins are husband and wife and are currently residents of

Manatee County, Florida.

    2.  Countrywide is a New York corporation registered to do business in the

State of Florida.

    3.  National Real Estate Information Services ("NREIS") maintains the

internet website www.nreis.com, and in that capacity represents to the public that

it, " . . .is one of the largest and most experienced providers of transaction

services to the U.S. residential and commercial mortgage and real estate

1

industries (and) provide(s) customized title services, appraisal services, and settlement services throughout the nation."

4. Ticor Title Insurance Company of Florida ("Ticor") is a title insurance underwriter, and NREIS acts as a settlement agent for Ticor.

5. Ticor is a subsidiary of Fidelity.

6. Fidelity is a national title insurance agency that also maintains retail locations to provide settlement services for real estate transactions.

7. On May 18, 2009, Collins sued Countrywide in the Circuit Court in and for Pinellas County, Florida.

8. On or about June 19, 2009, within the applicable time periods, Countrywide removed the state court case to this Court pursuant to 28 U.S.C. 1332 and 1441.

9. All actions set forth in this Third Amended Complaint occurred within, or are materially related to, real property that lies within the geographic boundaries of the jurisdictional limits of the United States District Court for the Middle District of Florida, Tampa Division.

10. For the foregoing reasons, this Court has jurisdiction over this action.

11. Prior to March 23, 2007, Robert H. Collins, Jr. held a leasehold estate by virtue of the Warranty Leasehold Estate Deed in a leasehold of a Condominium located in Pinellas County, Florida, a copy of which is attached hereto as Exhibit A ("the Condominium Deed"). This Complaint raises claims related to the Condominium Deed and real property located in Pinellas County, Florida, the Plaintiff seeks damages in excess of $15,000.00, all events giving

2

rise to this Complaint occurred within, or are materially related to, Pinellas County, Florida.

12. The Condominium Deed describes, on its face, that the ownership of Robert H. Collins, Jr. consists of a leasehold estate arising from a Condominium Lease Agreement ("the Condominium Lease"). Robert H. Collins, Jr. had inherited this leasehold estate from his mother.

13. The condominium described in the Condominium Lease and the Condominium Deed is hereinafter referred to as the "Condominium".

14. In 2007, prior to March 23, 2007, Collins resided in the Condominium.

15. In 2007, prior to March 23, 2007, Collins decided to purchase a single family home in Pinellas County, Florida, and contacted Countrywide to arrange financing.

16. In 2007, prior to March 23, 2007, Countrywide, through its agents and representatives, represented to Collins:

    a. That Countrywide held expertise in constructing financing arrangements for single-family home buyers;

    b. That Countrywide would be able to construct a financing arrangement for Collins that would allow Collins to purchase the single family home;

    c. That Countrywide would make recommendations to Collins to assist Collins in restructuring their financial affairs to qualify Collins to purchase the single family home;

d. That Countrywide would design a financial plan for Collins to allow Collins to retire debt through additional Countrywide lending;

e. That Countrywide would assist Collins in implementing the financial plan designed by Countrywide for Collins.

17. As a result of the aforesaid representations to Collins by Countrywide, Countrywide induced Collins to repose trust and confidence in Countrywide, and through said representations and inducement, Countrywide undertook a fiduciary relationship with Collins.

18. Countrywide, at the time that it made the aforesaid representations to Collins:

a. Knew that Collins did not qualify for the loan to purchase the single family home;

b. Knew that neither Robert H. Collins, Jr. nor Eileen Collins had any personal expertise regarding either finance or real estate;

c. Knew or should have known that Eileen Collins had never owned real estate, read a mortgage, entered a mortgage, or otherwise possessed individual knowledge or education relating to finance, mortgages, real estate, or the leasing of real estate;

d. Knew or should have known that the experience of Robert H. Collins, Jr., in real estate, was limited to his prior ownership of residential real estate in which he resided, that he possessed no

individual knowledge or education relating to finance, mortgages, real estate, or the leasing of real estate;

e.  Knew that the Collins were relying on Countrywide to develop a financial plan for Collins that would allow Collins to qualify for and purchase a home;

f.  After inducing Collins to accept the aforesaid representations of Countrywide, Countrywide accepted the fiduciary relationship by designing and implementing a financial plan for Collins that included loans from Countrywide to Collins; and

g.  By taking the aforesaid action, Countrywide induced Collins to repose trust and confidence in Countrywide, and by actually designing and implementing a financial plan for Collins to allow Collins to purportedly qualify for a loan, Countrywide expressly accepted that repose of trust and confidence.

19.  At the inception of the relationship between Countrywide and Collins, Eileen Collins specifically asked representatives of Countrywide how Countrywide could qualify Collins for the loan in question, and representatives of Countrywide represented to Collins that Countrywide possessed special experience, lending products, and financial acumen not possessed by other lenders, and Collins could rely on Countrywide to provide a workable personal financial plan for Collins.

20.  All representations to Collins by Countrywide were made by Countrywide through its authorized agents, employees, and representatives.

21. Collins submitted financial information to Countrywide, and,

    a.   Countrywide designed a financial plan for Collins;

    b.   Countrywide represented to Collins that Collins should rent the Condominium;

    c.   Countrywide represented to Collins that if Collins rented the Condominium, Collins' income would qualify for a mortgage on the single-family home purchase;

    d.   Countrywide represented to Collins that Collins should also place a mortgage on the Condominium in order to pay off certain outstanding secured and/or unsecured claims, and the payment of those claims would allow Collins' assets and debts to qualify for a mortgage on the single-family home purchase;

    e.   Countrywide represented to Collins that Countrywide would approve loans and mortgages to implement the plan;

    f.   Countrywide represented to Collins that, if Collins relied on the aforesaid representations of Countrywide, Collins would qualify for the subject loans and Collins would be able to pay the subject loans.

22. Based on the foregoing representations of Countrywide, Collins:

    a.   Rented the Condominium to a tenant to gain additional income to qualify for Countrywide's mortgages on an income basis;

b. Agreed to mortgage the Condominium and use the proceeds thereof to retire unsecured indebtedness to qualify for Countrywide's mortgages on an asset and liability basis; and

c. Proceeded to a closing of the mortgages with Countrywide on the Condominium and the purchase of a single-family home.

23. A closing occurred on March 23, 2007 ( the "Closing"), and:

a. The closing of the Condominium  Mortgage, and a First Mortgage and Second Mortgage on the house purchased by Mr. and Mrs. Collins (the "House Mortgages") occurred at an office of Fidelity in St. Petersburg, Florida;

b. The documents executed at the closing state that NREIS acted as settlement agent for the Condominium Mortgage, and NREIS acted as an agent for Ticor in issuing a lender's title insurance policy to Countrywide, insuring a first mortgage on the fee simple of the Condominium;

c. A representative of Fidelity, Patricia Wall, acknowledged in writing that Fidelity was the settlement agent for the House Mortgages.  The same Patricia Wall also acted as notary on the Condominium Mortgage and as settlement agent of the Condominium Mortgage, and Fidelity thereby assumed the obligations of settlement agent as to the Condominium Mortgage;

d.  At closing, Ticor and NREIS provided a written title insurance commitment to Countrywide to provide a lender's title insurance policy to Countrywide insuring a first mortgage on the fee of the Condominium, even though Ticor and NREIS knew or should have known that Countrywide did not have a first mortgage on the fee of the Condominium;

e.  NREIS, acting as settlement agent for Mr. and Mrs. Collins, and as title insurance agent for Ticor, prepared a Quit Claim Deed through an employee of NREIS who is not a Florida attorney, wherein Robert H. Collins, Jr., Deeded to Robert H. Collins, Jr. and Eileen Collins, the Condominium.  A copy of this Quit Claim Deed is attached hereto as Exhibit B (the "Quit Claim Deed");

f.  NERIS, Fidelity, and Countrywide all represented to Collins before and at the closing, through the representations of the Fidelity representative who was conducting the closing, that the Quit Claim Deed was a valid and appropriate document necessary to consummate the closing;

g.  Through the use of the Quit Claim Deed, Countrywide, NREIS, and Fidelity made the financial records of Collins appear to show that Robert H. Collins, Jr. owned the fee of the Condominium when, in truth and in fact, Robert H. Collins, Jr. only owned a leasehold estate;

8

h. Countrywide utilized the rental income of the Condominium that had only just recently been received upon the advice and direction of Countrywide, to qualify the Collins' income for the House Mortgages;

i. Countrywide, NREIS, and Fidelity, utilized the Quit Claim Deed to place a mortgage that appeared to be a mortgage on the fee estate of the Condominium, a copy of which is attached as Exhibit C (the "Condominium Mortgage");

j. Countrywide utilized the proceeds of the Condominium Mortgage to retire indebtedness so Collins would qualify on an asset and liability basis for both the Condominium Mortgage and the House Mortgage. At the Closing, Collins received checks payable to Collins' various creditors that were paid off at the behest of Countrywide to qualify Collins for the Countrywide mortgages, copies of the HUD-1 statements of the Condominium Mortgage and the two House Mortgages are attached as composite Exhibit D; and

k. An existing mortgage on the Condominium was satisfied by payment made by NREIS and Fidelity through its closing agents and a series of unsecured debts were satisfied through checks drawn on the title agency, either Fidelity or NREIS, and given to Collins at closing with instructions that Collins should send the payments to Collins' creditors.

24.   At all times material hereto, Countrywide, through access to Collins' financial records, knew that Collins had never acted as a landlord on any properties and knew that Collins had no experience in renting properties.

25.   At all times material hereto, Countrywide knew that Collins, in all probability, would not have sufficient income to pay the House Mortgage and the Condominium Mortgage, and Countrywide knew that if Collins' new tenant defaulted in rental payments on the Condominium that Collins would in turn default in payments to Countrywide.

26. Countrywide knew that Collins had no savings accounts or other assets to use to maintain current payments in the event of the default by Collins' tenant or other financial setback.

27.   Shortly after the Closing, Collins' tenant defaulted in rental payments on the Condominium.

28.   Collins thereafter defaulted in payments on the Condominium Lease.

29.   The fee owner of the Condominium sued Collins, a copy of the Amended Complaint being attached as Exhibit E (the "Condominium Complaint").

30.   In the Condominium Complaint, the fee owner of the Condominium declared a default in the Condominium Lease, including without limitations, claims in Paragraph 29 of the Condominium Complaint relating to the execution and delivery of the Quit Claim Deed.

31.   In making the aforesaid representations to Collins by Countrywide, Countrywide failed to represent to Collins the negative financial implications that

would be incurred by Collins through Collins' reliance upon the representations of Countrywide, including:

    a.  By renting the Condominium, Collins would become liable for real property taxes that were not included in the anticipated expenses of Collins and would permanently lose his property tax rate cap on homestead property;

    b.  By renting the Condominium and by virtue of the Quit Claim Deed, Collins defaulted in the Condominium Lease rendering the Condominium Lease, and the income from the Condominium, to be lost;

    c.  The loss of the Condominium income, either through the tenants default or a declared default by the Condominium fee owner, would, with certainty, put the Collins' into financial default to Countrywide on both the House Mortgage and the Condominium Mortgage;

    d.  Based on the actions of Countrywide, Collins was destined to default in payments to Countrywide and suffer the loss of his ownership of the Condominium and the House since the Quit Claim Deed and the renting of the Condominium was an express violation of the Condominium Lease and the income from the rental of the Condominium was necessary for Collins to pay Countrywide; and

e. Countrywide intended to sell and assign the House Mortgages and the Condominium Mortgage to third parties who would sue Collins' upon Collins' default and attempt to foreclose both the House and the Condominium, and expose Collins to deficiency judgments and a complete loss of all equity and real estate ownership.

32. Countrywide, NREIS, and Fidelity, through their agents and representatives, utilized the Quit Claim Deed to create the false appearance that Collins owned the fee of the Condominium in order to allow Collins to qualify for the House Mortgage and the Condominium  Mortgage.

33.  Collins settled the Condominium Complaint and was able to prevent the loss of the Condominium through litigation.  The settlement of the Condominium Complaint required Collins to rescind the Quit Claim Deed, said rescission Deed being recorded at OR Book 16584 Page 1521, Public Records of Pinellas County, Florida.

34. On a date unknown, Countrywide assigned and transferred to the Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates Series 2007-7 ("the Bank of New York") the Condominium Mortgage, and did represent to the Bank of New York that Countrywide held a first mortgage on the fee of the Condominium.  In conjunction with this assignment, Countrywide assigned the lender's title insurance policy issued by NREIS and Ticor to Countrywide insuring a first mortgage on the fee of the Condominium.

35. Countrywide assigned and transferred the House Mortgages to the Bank of New York.

36. The Bank of New York has filed two separate foreclosure lawsuits against Collins (the "Bank of New York Foreclosures") as follows, both of which remain pending as of the date of this Second Amended Complaint:

    a. Case No. 08010347CI, Circuit Court of Pinellas County, Florida, foreclosing the House Mortgage, filed July 15, 2008, and;

    b. Case No. 0918349CI, Circuit Court of Pinellas County, Florida, foreclosing the Condominium Mortgage, filed October 26, 2009.

37. As a proximate cause of the aforesaid actions of Countrywide, Fidelity, and NREIS, the Collins sustained the following damages:

    a. loss of credit rating due to the record filing of the Condominium Complaint, and the Bank of New York Foreclosures;

    b. attorney fees and the costs of litigation;

    c. loss of Florida homestead tax incentives resulting in the Collins' payment of real property taxes that would not have been payable by Collins, and a loss of the homestead real property tax rate cap due to the conversion of the Condominium to a rental unit; and

    d. exposure to deficiency balances in the Bank of New York Foreclosures.

38. All conditions precedent to this action have occurred, been satisfied, or have been waived.

**Count One:  Breach of Fiduciary Duty as to Defendant Countrywide**

39. This is an action for breach of fiduciary duty.

40. Collins realleges and incorporates herein paragraphs 1- 38.

41. Countrywide made representations to Collins set forth in Paragraphs 1-36.

42. By taking the aforesaid actions, a fiduciary relationship was created between Countrywide and Collins, resulting in a fiduciary duty owed by Countrywide to Collins.

43. Countrywide expressly created and accepted its role as fiduciary to Collins, and induced Collins to repose trust and confidence in Countrywide. Countrywide's acceptance of its role as fiduciary was manifested by Countrywide:

       a.  Actually creating a financial plan for Collins;

       b.  Inducing Collins to believe that Countrywide's financial plan was based on Countrywide's special expertise in arranging home loan financing packages for people like Collins;

       c.  Instructing Collins on how to implement Countrywide's financial plan for Collins; and

       d.  Creating documents and entering agreements including the Condominium Mortgage.

44. Countrywide breached its fiduciary duty to Collins.

45. As a proximate cause of said breach of fiduciary duty, Collins has sustained damages in excess of $15,000.00, as follows:

a.  damage to credit rating and report;

b.  financial damages relating to the losses associated with payments made on the Condominium Mortgage and the House Mortgage;

c.  financial damages relating to the payment for replacement housing;

d.  loss of protection relating to the Florida laws on homestead in relation to the Condominium;

e.  attorney fees and costs in defending the Condominium Complaint and the Bank of New York Foreclosures; and

f.  damages relating to any claims by the Bank of New York on the promissory notes secured by the Condominium Mortgage and the House Mortgage.

Wherefore; Collins demands damages in excess of $15,000.00, the costs of this action, and such other relief as the Court deems appropriate.

**Count Two:  Negligence as to Defendant Countrywide**

46. This is an action for negligence against Countrywide.

47. Collins realleges paragraphs 1 – 38.

48. In the Condominium Mortgage closing, NREIS acted as settlement agent for the Condominium Mortgage, and thereby assumed an agency relationship to both Countrywide, as lender, and the Collins, as borrowers.

49. In the Condominium Mortgage closing, Fidelity also acted as settlement agent for both the Condominium Mortgage and the House Mortgages

through its representative, Patricia Wall, who executed the HUD-1 for the House Mortgages on behalf of Fidelity National Title Insurance Company as Settlement Agent, and also acted as the Notary Public on the Condominium Mortgage and performed all other actions required of the settlement agent in the closing of the Condominium Mortgage.  Accordingly, Fidelity thereby assumed an agency relationship to both Countrywide, as lender, and the Collins, as borrowers.

50. Countrywide directed NREIS to draft the Quit Claim Deed as part of Countrywide's requirements for the Condominium Mortgage closing, and;

    a.  NREIS, in its capacity as settlement agent for both Countrywide and the Collins, assumed the responsibility to draft the Quit Claim Deed; and

    b.  Fidelity, in its capacity as settlement agent for both Countrywide and the Collins, assumed the responsibility to induce the Collins to execute the Quit Claim Deed.

51. By directing the Collins to execute the Quit Claim Deed as a condition of the closing of the Condominium Mortgage, and by directing NREIS, as Countrywide's settlement agent, to draft the Quit Claim Deed, and by proceeding to the closing of the Condominium Mortgage and inducing the Collins to execute all closing documents relating to the Condominium Mortgage through its settlement agent, Fidelity, Countrywide had the duty to Collins to:

    a.  exercise reasonable care in reviewing the state of title of the Condominium;

b.  exercise reasonable care in recommending to Collins to execute the Quit Claim Deed;

c.  properly review the title record of the Condominium and determine if the Quit Claim Deed violated any restrictions of record including anti-assignment provisions of the Lease;

d.  advise Collins of all implications of executing the Quit Claim Deed; and

e.  advise Collins that the status of title reflected in the title record did not conform to the status of title set forth in the Countrywide loan closing package and the title insurance policy that Ticor and NREIS was issuing to Countrywide in conjunction with the closing.

52. The Quit Claim Deed constituted a breach of the Condominium Lease between Robert H. Collins, Jr., and the fee owner of the Condominium, in that it constituted a transfer of Robert H. Collins, Jr.'s Leasehold Estate without the consent of the fee holder, in violation of the anti-assignment provisions of the Lease.

53. Countrywide, through its own actions and through the actions of its agents, was negligent in reviewing the status of title of the Condominium, and as a proximate cause of said negligence, either did not determine or did not communicate to Collins that Collins' interest in the Condominium was a leasehold and not a fee ownership and that the execution of the Quit Claim Deed constituted a default in the underlying Lease.

54. Countrywide failed to communicate to Collins that the Quit Claim Deed constituted a breach of the Condominium Lease.  In fact, Countrywide through its own representatives, and through its settlement agents NREIS, and Fidelity, affirmatively represented to Collins that the execution of the Quit Claim Deed was proper.

55. As a proximate cause of the foregoing negligence of Countrywide Collins' executed the Quit Claim Deed.

56. Had Countrywide, either individually or through its agents Fidelity and NREIS, conducted a reasonable investigation of the status of title of the Condominium and properly communicated to Collins that Collins' interest was a leasehold interest and not a fee interest and the Quit Claim Deed would constitute a breach of the Condominium Lease, Collins would not have closed on the Condominium Mortgage or the House Mortgages.  Therefore, all of the damages caused to Collins through his purchase of the House, the execution of the House Mortgages, the execution of the Quit Claim Deed, and the execution of the Condominium Mortgage and the subsequent default thereon, were all proximately caused by the negligence of Countrywide, either individually or through its agents NREIS and Fidelity, in examining the status of title of the Condominium and negligently preparing and causing the Quit Claim Deed to be executed.  These damages include but are not limited to all damages set forth in Paragraph 37.

Wherefore; Collins demands damages against Countrywide, the costs of this action, and such other relief as the Court deems appropriate.

**Count Three:  Breach of Fiduciary Duty as to Defendant NREIS**

57. This is an action for breach of fiduciary duty against the Defendant NREIS.

58. Collins realleges and incorporates herein paragraphs 1- 38.

59. NREIS acted as settlement agent to the Collins in closing the Condominium Mortgage, and thereby assumed a fiduciary duty to the Collins.

60. As settlement agent, NREIS charged the Collins the sum of $195.00 for Title Examination, as reflected on Line 1103 of the HUD-1 for the Condominium Mortgage.

61. By taking the foregoing actions, NREIS breached its fiduciary duty to Collins.

62. As a proximate cause of said breach of fiduciary duty, Collins has sustained damages in excess of $15,000.00, as follows:

   a.  damage to credit rating and report;

   b.  financial damages relating to the losses associated with payments made on the Condominium Mortgage and the House Mortgage;

   c.  financial damages relating to the payment for replacement housing;

   d.  loss of protection relating to the Florida laws on homestead in relation to the Condominium;

   e.  attorney fees and costs in defending the Condominium Complaint and the Bank of New York Foreclosures; and

f.   damages relating to any claims by the Bank of New York on the promissory notes secured by the Condominium Mortgage and the House Mortgage.

Wherefore; Collins demands damages against the Defendant NREIS in excess of $15,000.00, the costs of this action, and such other relief as the Court deems appropriate.

## Count Four:  Negligence as to Defendant NREIS

63. This is an action for negligence against Defendant NREIS

64. Collins realleges paragraphs 1 – 38.

65. In the Condominium Mortgage closing, NREIS acted as settlement agent for the Condominium Mortgage, and thereby assumed an agency relationship to both Countrywide, as lender, and the Collins, as borrowers.

66. As settlement agent, NREIS had the obligation to conduct the closing of the Condominium Mortgage in a reasonably prudent manner.

67. As settlement agent, NREIS charged the Collins the sum of $195.00 for Title Examination, as reflected on Line 1103 of the HUD-1 for the Condominium Mortgage.

68. Countrywide directed NREIS to draft the Quit Claim Deed as part of Countrywide's requirements for the Condominium Mortgage closing, and;

a.  NREIS, in its capacity as settlement agent for both Countrywide and the Collins, assumed the responsibility to draft the Quit Claim Deed for Collins and NREIS drafted the Quit Claim Deed, and

    b. Fidelity, in its capacity as settlement agent for both Countrywide and the Collins, assumed the responsibility to induce Mr. and Mrs. Collins to execute the Quit Claim Deed.

69. By drafting the Quit Claim Deed with the knowledge that it would be executed by Mr. and Mrs. Collins, and by proceeding to the closing of the Condominium Mortgage and inducing Mr. and Mrs. Collins to execute all closing documents relating to the Condominium Mortgage, and by charging the Collins the sum of $195.00 to examine the status of title of the Condominium, NREIS had the duty to Collins to:

    a. exercise reasonable care in reviewing the state of title of the Condominium;

    b. exercise reasonable care in recommending to Collins to execute the Quit Claim Deed;

    c. properly review the title record of the Condominium and determine if the Quit Claim Deed violated any restrictions of record including anti-assignment provisions of the Lease;

    d. advise Collins of all implications of executing the Quit Claim Deed; and

    e. advise Collins that the status of title reflected in the title record did not conform to the status of title set forth in the Countrywide loan closing package and the title insurance policy that Ticor and NREIS was issuing to Countrywide in conjunction with the closing.

70. The Quit Claim Deed constituted a breach of the Condominium Lease between Robert H. Collins, Jr., and the fee owner of the Condominium, in that it constituted a transfer of Robert H. Collins, Jr.'s Leasehold Estate without the consent of the fee holder, in violation of the anti-assignment provisions of the Lease.

71. NREIS was negligent in reviewing the status of title of the Condominium, and as a proximate cause of said negligence, either did not determine or did not communicate to Collins that Collins' interest in the Condominium was a leasehold and not a fee ownership and that the execution of the Quit Claim Deed constituted a default in the underlying Lease.

72. Further, although NREIS charged for title examination and acted as title agent for the purpose of issuing a title insurance lender's policy to Countrywide, NREIS did not advise Countrywide of the status of the Condominium title as a leasehold.

73. NREIS failed to communicate to Collins that the Quit Claim Deed constituted a breach of the Condominium Lease.  In fact, NREIS affirmatively represented to Collins that the execution of the Quit Claim Deed was proper.

74. As a proximate cause of the foregoing negligence of NREIS, Collins' executed the Quit Claim Deed.

75. Had NREIS conducted a reasonable investigation of the status of title of the Condominium and properly communicated to Collins that Collins' interest was a leasehold interest and not a fee interest and the Quit Claim Deed would constitute a breach of the Condominium Lease, Collins would not have closed on

the Condominium Mortgage or the House Mortgages.  Therefore, all of the damages caused to Collins through his purchase of the House, the execution of the House Mortgages, the execution of the Quit Claim Deed, and the execution of the Condominium Mortgage and the subsequent default thereon, were all proximately caused by the negligence of NREIS, in examining the status of title of the Condominium and negligently preparing and causing the Quit Claim Deed to be executed.  These damages include but are not limited to all damages set forth in Paragraph 37.

Wherefore; Collins demands damages against NREIS the costs of this action, and such other relief as the Court deems appropriate.

## Count Five:  Breach of Fiduciary Duty as to Defendant Fidelity

76. This is an action for breach of fiduciary duty.

77. Collins realleges and incorporates herein paragraphs 1- 38.

78. Fidelity contractually agreed to act as settlement agent in the closing of the House Mortgages, and did act as settlement agent in the closing of the Condominium Mortgage through the actions of Patrice Wall, a representative of Fidelity, who also acted as settlement agent in the execution of all documents relating to the Condominium Mortgage, including the Condominium Mortgage itself.

79.  By taking the aforesaid actions, a fiduciary relationship was created between Fidelity and Collins, resulting in a fiduciary duty owed by Fidelity to the Collins.

80. By taking the foregoing actions, Fidelity breached its fiduciary duty to Collins.

81. As a proximate cause of said breach of fiduciary duty, Collins has sustained damages in excess of $15,000.00, as follows:

    a.  damage to credit rating and report;

    b.  financial damages relating to the losses associated with payments made on the Condominium Mortgage and the House Mortgage;

    c.  financial damages relating to the payment for replacement housing;

    d.  loss of protection relating to the Florida laws on homestead in relation to the Condominium;

    e.  attorney fees and costs in defending the Condominium Complaint and the Bank of New York Foreclosures; and

    f.  damages relating to any claims by the Bank of New York on the promissory notes secured by the Condominium Mortgage and the House Mortgage.

Wherefore; Collins demands damages in excess of $15,000.00, the costs of this action, and such other relief as the Court deems appropriate.

**Count Six: Negligence as to Defendant Fidelity**

82. This is an action for negligence against the Defendant Fidelity.

83. Collins realleges paragraphs 1 – 38.

84. In the Condominium Mortgage closing, Fidelity acted as settlement agent for both the Condominium Mortgage and the House Mortgages through its representative, Patricia Wall, who executed the HUD-1 for the House Mortgages on behalf of Fidelity National Title Insurance Company as Settlement Agent, and also acted as the Notary Public on the Condominium Mortgage and performed all other actions required of the settlement agent in the closing of the Condominium Mortgage. Accordingly, Fidelity thereby assumed the obligations of a Settlement Agent on the Condominium Mortgage and assumed an agency relationship to both Countrywide, as lender, and the Collins, as borrowers.

85. As settlement agent, Fidelity had the obligation to conduct the closing of the Condominium Mortgage in a reasonably prudent manner.

86. Countrywide directed NREIS to draft the Quit Claim Deed as part of Countrywide's requirements for the Condominium Mortgage closing, and;

      a. NREIS, in its capacity as settlement agent for both Countrywide and the Collins, assumed the responsibility to draft the Quit Claim Deed for Collins and NREIS drafted the Quit Claim Deed, and

      b. Fidelity, in its capacity as settlement agent for both Countrywide and the Collins, assumed the responsibility to induce Mr. and Mrs. Collins to execute the Quit Claim Deed.

87. By inducing Mr. and Mrs. Collins to execute all closing documents relating to the Condominium Mortgage, including the Quit Claim Deed and the Condominium Mortgage, Fidelity had the duty to Collins to:

a.   exercise reasonable care in reviewing the state of title of the Condominium;

b.   exercise reasonable care in recommending to Collins to execute the Quit Claim Deed;

c.   properly review the title record of the Condominium and determine if the Quit Claim Deed violated any restrictions of record including anti-assignment provisions of the Lease;

d.   advise Collins of all implications of executing the Quit Claim Deed; and

e.   advise Collins that the status of title reflected in the title record did not conform to the status of title set forth in the Countrywide loan closing package and the title insurance policy that Ticor and NREIS was issuing to Countrywide in conjunction with the closing.

88. The Quit Claim Deed constituted a breach of the Condominium Lease between Robert H. Collins, Jr., and the fee owner of the Condominium, in that it constituted a transfer of Robert H. Collins, Jr.'s Leasehold Estate without the consent of the fee holder, in violation of the anti-assignment provisions of the Lease.

89. Fidelity was negligent in reviewing the status of title of the Condominium, and as a proximate cause of said negligence, either did not determine or did not communicate to Collins that Collins' interest in the

Condominium was a leasehold and not a fee ownership and that the execution of the Quit Claim Deed constituted a default in the underlying Lease.

90. Fidelity failed to communicate to Collins that the Quit Claim Deed constituted a breach of the Condominium Lease. In fact, Fidelity affirmatively represented to Collins that the execution of the Quit Claim Deed was proper.

91. As a proximate cause of the foregoing negligence of Fidelity, Collins' executed the Quit Claim Deed.

92. Had Fidelity conducted a reasonable investigation of the status of title of the Condominium and properly communicated to Collins that Collins' interest was a leasehold interest and not a fee interest and the Quit Claim Deed would constitute a breach of the Condominium Lease, Collins would not have closed on the Condominium Mortgage or the House Mortgages. Therefore, all of the damages caused to Collins through his purchase of the House, the execution of the House Mortgages, the execution of the Quit Claim Deed, and the execution of the Condominium Mortgage and the subsequent default thereon, were all proximately caused by the negligence of Fidelity, in examining the status of title of the Condominium and negligently preparing and causing the Quit Claim Deed to be executed. These damages include but are not limited to all damages set forth in Paragraph 37.

Wherefore; Collins demands damages against Fidelity, the costs of this action, and such other relief as the Court deems appropriate.

Jury Demand: Collins demand trial by jury on all actions so triable.

<u>Certificate of Service</u>

I hereby certify that on the 2 day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Donald J. Schutz, Esq.
535 Central Avenue
St. Petersburg, FL  33701
727-823-3222
727-895-3222 Telefax
Fla Bar No 382701
Attorney for Plaintiffs